IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:26-cv-01451-SKC

EVER CRUZ CRUZ,

     Petitioner,

v.

JUAN BALTAZAR, *et al.*,

     Respondents.

---

**ORDER**

---

Before the Court is Petitioner Ever Cruz Cruz's Petition for Writ of Habeas Corpus. Dkt. 1. Mr. Cruz is a native and citizen of Honduras who entered the United States without inspection on March 22, 2009. *Id.* ¶24. He resided in the United States without incident until May 19, 2025, when he was arrested following an argument with his then-girlfriend.[1] *Id.* ¶26. After he was released from custody, ICE arrested and detained him and issued a Notice to Appear, charging him as a noncitizen "present in the United States who has not been admitted or paroled." *Id.*; *see also* Dkt. 9, p.3. On July 11, 2025, Petitioner had a custody redetermination hearing before an immigration judge, and the immigration judge ordered that he be released from

---

[1] The charges were later dropped. Dkt. 1, ¶26.

custody under a $5,000.00 bond and enrollment in ICE's Alternatives to Detention (ATD) program. Dkt. 9, p.4. Petitioner was then enrolled in ICE's Intensive Supervision Appearance Program (ISAP) system, which is part of the ATD program. *Id.*

As a condition of his release, Mr. Cruz was placed on GPS monitoring, was required to report to the ISAP office in Orlando, Florida once per month, and was given a phone application through which he received appointment information and communicated with his case manager. Dkt. 1, ¶31. Between his release and his re-detention, Petitioner never missed an appointment or other obligation. *Id.* ¶¶32–33.

On December 5, 2025, Mr. Cruz's wife received a call informing her that Mr. Cruz needed to report in person to the Orlando office. *Id.* ¶39. When Mr. Cruz reported to the office, he was arrested by ICE officials. *Id.* ¶40–41. The circumstances surrounding why Mr. Cruz was required to report to the office and what happened when he got there are in dispute. Respondents allege that Mr. Cruz sent threatening text messages to an ISAP staff member and when ICE attempted to take him into custody he "became belligerent and physically resisted the officers' attempts." Dkt. 9, p.4. Mr. Cruz denies these allegations. Dkt. 1, p.41.

On February 10, 2026, an immigration judge held a hearing on the merits of Mr. Cruz's application for asylum and withholding of removal and denied both applications. Dkt. 9, p.5. He appealed that decision on March 11, 2026. *Id.* To date, Mr. Cruz remains detained at the Denver Contract Detention facility. Dkt. 1, ¶1. Mr.

2

Cruz argues that his re-detention without a hearing violates his due process rights under the Fifth Amendment. *Id.* ¶¶62–71.

At the outset, Respondents argue that this Court does not have jurisdiction because "discretionary decisions to terminate bond are not judicially reviewable under 8 U.S.C. Sec. 1252(a)(2)B)(ii), 1226(e)". Dkt. 9, pp.8–10. But Petitioner is not challenging the decision to terminate bond; he is challenging the procedures by which his bond was terminated. This is permissible. *See Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1217 (10th Cir. 2001). Thus, the Court has jurisdiction over this matter under Section 2241 of Title 28, which authorizes it to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[T]he traditional function of the writ is to secure release from illegal custody." *Id.* Noncitizens may properly challenge the lawfulness of their detention through habeas proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

The Court has considered the Petition, Response, Reply, the various attachments, and the governing law. Because Petitioner's challenge is fundamentally legal in nature, the Court declines to hold a hearing. *See* 28 U.S.C. § 2243. For the reasons shared below the Court GRANTS the Petition.

## ANALYSIS

### A.      Petitioner is Not Detained Under 8 U.S.C. § 1225

Respondents argue that "the petitioner does *not* challenge Respondents' determination that Petitioner is subject to mandatory detention under § 1225." Dkt. 9, p.6 (emphasis in original). In Reply, Petitioner asserts that he "disputes any assertion by Respondents that he is detained under 8 U.S.C. § 1225(b)." Dkt. 10, p.3. The Court first notes that it is not unusual at all that Petitioner does not mention § 1225 in his Petition as Respondents might have this Court believe. Petitioner's only claim for relief is based on a violation of his due process rights, not based on a violation of the Immigration & Nationality Act. *See* Dkt. 1, ¶¶62–72. There was no need to discuss § 1225, especially given the circumstances of this specific case, as discussed below.

With respect to the § 1225 argument, this case presents a similar factual background to a myriad of other cases this Court has decided. For example, this Court conducted a review of the governing statutes relied on by the parties here and concluded that when 8 U.S.C. §§ 1225 and 1226 are read together, they "cover [noncitizens] presenting at arrival (under § 1225) and then *everybody else* (under § 1226)." *Aleman Hernandez v. Baltazar*, No. 1:25-cv-3688-SKC-SBP, 2025 WL 3718159, at *6 (D. Colo. Dec. 23, 2025) (citing *J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at *4 (S.D.N.Y. Oct. 28, 2025)) (emphasis in original). Because Mr. Aleman Hernandez had been present in the United States for more than a decade,

the Court found that Respondents were unlawfully detaining him under § 1225, and that he was only properly detained under § 1226. *Id.*

Here, Mr. Cruz has been in the country since 2009. It cannot be credibly said he is seeking admission as described under § 1225(b)(2)(A). If that were not enough, Respondents own actions confirm this. Petitioner was given a bond hearing and was released on bond, a procedure specifically relegated to noncitizens being detained under § 1226. Respondents cannot change their position now. *See Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *5 (N.D. Ill. Oct. 24, 2025) ("[S]ettled law precludes the Government from now switching gears to contend that he has actually been detained under Section 1225(b)(2).").

**B.     Petitioner did not Fail to Exhaust his Administrative Remedies**

Respondents' next argument is that Petitioner failed to exhaust his administrative remedies because he "arguably could have raised the issue of his bond revocation during his February 10, 2026, proceedings in front of the IJ. And he could have appealed any bond determination by the IJ to the BIA." Dkt. 9, p.7. In habeas cases, Petitioners are arguably required to exhaust their administrative remedies prior to seeking a writ, but exhaustion is not a statutory requirement. *Lopez v. Noem*, No. 26cv641 JB/JFR, 2026 WL 836603, at *3 (D.N.M. Mar. 26, 2026) (citing *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010)). Specifically, within the immigration habeas context, "exhaustion is typically nonjurisdictional, and courts treat a rule as jurisdictional only if Congress clearly states that it is." *Salvador F.-G. v. Noem*, No.

5

25-cv-0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. Okla. June 12, 2025) (quoting *Santos-Zacaria v. Garland*, 598 U.S. 411, 416–17 (2023)). The INA only explicitly requires exhaustion of administrative remedies when challenging a final removal order. 8 U.S.C. § 1252(d)(1). And because Congress has not proscribed that exhaustion is required in the circumstances before this Court, sound judicial discretion governs. *Lopez*, 2026 WL 836603, at *3; *see also L.G. v. Choate*, 744 F. Supp. 3d 1172, 1181 (D. Colo. 2024) ("When Congress does not require exhaustion in the statute then the district court has discretion to decide if administrative exhaustion is required."); *Zacarias v. Mullin*, No. 26-cv-0574-WJM, 2026 WL 1092162, at *3 (D. Colo. Apr. 22, 2026) (Petitioner "challenges the procedures employed by the IJ at his bond hearing, so exhaustion is merely prudential, not mandatory"). Accordingly, it was not required that Petitioner exhaust his administrative remedies before he brought his Petition and the Court does not believe, in its sound discretion and given what is at stake, *i.e.*, Petitioner's due process right to be free from detention, that Petitioner should.

## C.    Petitioner has a Due Process Right

The Due Process Clause prohibits deprivation of life, liberty, and property without due process of law.[2] U.S. Const. amend. V. These protections extend to

---

[2] Respondents argue that Petitioner has received due process because he was later and after the fact of his detention, provided written notice of the basis for terminating his bond. Dkt. 9, p.10. However, this fact is immaterial to the Court's decision because the Court finds that Petitioner was entitled to a pre-deprivation hearing, which he was not given.

noncitizens within the United States. *Zadvydas*, 533 U.S. at 693. Courts analyze due process claims in two steps: first, the court asks whether there is a protected liberty interest under the Due Process Clause, and second, the court examines the procedures necessary to ensure any deprivations of the protected liberty interest accords with the Constitution. *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

With respect to the first step, the Court finds that Mr. Cruz has a protected liberty interest in his freedom from detention. *See Ekenge v. Baltazar*, No. 1:26-cv-00630-SBP, 2026 WL 617341, at *3 (D. Colo. Mar. 5, 2026) (citing cases); see also *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (freedom from physical detention "is the most elemental of liberty interests").

Respondents argue that under *Demore v. Kim*, 538 U.S. 510 (2003), Petitioner has not shown that his detention violates due process. Dkt. 9, p.12. Magistrate Judge Prose analyzed this issue in *Merchan-Pacheo v. Noem*, No. 1:25-cv-03860-SBP, 2026 WL 88526, at *5 (D. Colo. Jan. 12, 2026), and the Court agrees with her detailed reasoning. She stated:

> Although *Demore* certainly makes it clear that detention during removal proceedings is permissible under certain circumstances—such as where a noncitizen subject to mandatory detention has already conceded he is subject to deportation—it does not follow that *all* forms of detention of noncitizens during removal proceedings and all related procedures comport with due process.

*Id.* (emphasis in original).

7

And *Demore* itself acknowledges that "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Further, the fact that Mr. Cruz had previously been released on bond places him in a "substantively different position than a 'deportable alien' who had never gained release by the government pursuant to an OREC or some similar status, like the petitioners in *Demore*" because "[e]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *See Ekenge*, 2026 WL 617341, at *3 (quoting *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)).

Respondents also argue that in order to show a due process violation, Mr. Cruz must show that he has been deprived of a statutory right. Dkt. 9, p.13.[3] But the due

---

[3] Respondents argue that "[h]e has not been deprived of any statutory right as he is properly detained under 8 U.S.C. § 1225(b)(2)(A), and he does not argue otherwise." Dkt. 9, p.14. As discussed above, Mr. Cruz is not detained under § 1225. And while Petitioner does not make this argument, the Court notes it is unclear whether Respondents complied with § 1226, which states that "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). According to the implementing regulations, bond may be revoked by "the district director, acting district director, deputy district director, assistant district director for investigations, assistant director for detention and deportation, or officer in charge." 8 C.F.R. § 236.1(9). There is no indication by Respondents that any of these people were the ones to revoke Petitioner's bond. In addition, Respondents have not produced the warrant or suggested that they re-detained Petitioner pursuant to the original warrant.

process protections of the Fifth Amendment extend to "all persons within the territory of the United States . . . and [ ] even [noncitizens] shall not be . . . deprived of life, liberty, or property without due process of law." *Wong Wing v. United States*, 163 U.S. 228, 238 (1896); *see also Zadvydas*, 533 U.S. at 679 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").

The Court in *Ekenge* summarized the issue when it said:

"[W]hile Respondents are correct that non-citizens' liberty interests are not equivalent to those enjoyed by citizens . . . that does not negate Petitioner's liberty interest in not being detained." *Kumar v. Wamsley*, No. 25-cv-1772, 2025 WL 2677089, at *3 (W.D. Wash. 2025). The fact "[t]hat the express terms of the parole notice allowed for [ ] termination or expiration does not somehow obviate the need for the Government to provide an individualized hearing prior to re-detaining the parolee." *Ramirez Tesara*, 800 F. Supp. 3d at 1136. Indeed, as alluded to above, in highly similar circumstances, other federal courts have held that "due process clearly requires that Petitioner be given a hearing before his bond is revoked." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1090 (E.D. Cal. 2025) (citing *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017)); *see, e.g.*, *Osorio Molina v. Hermosillo*, No. 26-cv-95-RAJ, 2026 WL 381161, at *1 (W.D. Wash. Feb. 11, 2026) (releasing a petitioner who had his OREC revoked because he allegedly violated his reporting conditions by failing to report since his release where the petitioner was not provided with sufficient procedural due process.).

*Ekenge*, 2026 WL 617341, at *4. The same is true in this case. While § 1226 permits Respondents to revoke parole, this does not mean that Petitioner is not owed due process under the Fifth Amendment, *i.e.*, a pre-detention hearing.

Respondents also argue that "Petitioner has not shown that any procedural violation would demonstrate that his detention is substantively unwarranted"

because he violated the terms of his bond when "[h]e issued threatening text messages to an ISAP office staff member, and then became belligerent with officers, later resisting being taken into custody and attempting to escape from a moving vehicle." Dkt. 9, p.15. As addressed above, due process requires that Mr. Cruz be given a hearing before his re-detention occurs. And while Respondents articulate the alleged reasons Mr. Cruz's bond was revoked, Mr. Cruz disputes those facts as alleged. Dkt. 1, ¶¶40–42, 46. This type of factual dispute is exactly what a pre-deprivation hearing could have resolved. And, "[t]he fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting *E.A T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)).

**D.    *Mathews v. Eldridge* Applies**

Now that the Court has established that Mr. Cruz had a protected liberty interest, it moves to step two regarding what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To conduct this analysis, Petitioner uses the factors in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Dkt. 1, ¶¶64–69. Under *Mathews*, courts consider three factors: (1) the private interest that will be affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the Government's interest, including the

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. Respondents argue that it is not proper to use the *Mathews* test in this context. Dkt. 9, p.17. Magistrate Judge Prose also addressed this issue in *Merchan-Pacheo* and found that the *Mathews* factors applied. *Merchan-Pacheo*, 2026 WL 88526, at *6; *see also Ekenge*, 2026 WL 617341, at *4 (applying *Mathews* in a substantially similar context). Indeed, this Court has applied the *Mathews* test when analyzing the due process rights of a noncitizen. *See Rivas v. Baltazar*, No. 1:26-cv-00442-SKC, 2026 WL 444732, at *2 (D. Colo. Feb. 17, 2026). Accordingly, the Court concludes that the use of the *Mathews* test is proper in this case.[4]

With respect to the first *Mathews* factor, the Court finds that Petitioner has a significant private liberty interest at stake. As noted above, Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529; *see also Choate*, 744 F. Supp. 3d at 1182 (D. Colo. 2024); *Ekenge*, 2026 WL 617341, at *5; *Acosta v. Lyons*, No. 2:26-cv-00838-DHU-JFR, 2026 WL 821902, at *3 (D.N.M. Mar. 25, 2026). In fact, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Martinez-Elvir v. Olson*, 807 F. Supp. 3d 725, 742

---

[4] Respondents do not analyze what outcome the Court should come to under the *Mathews* test.

(W.D. Ky. 2025) (quoting *Zadvydas*, 533 U.S. at 690). Thus, the first factor weighs in favor of Petitioner.

The second factor also weighs in favor of Petitioner. At Petitioner's custody redetermination hearing on July 11, 2025, the immigration judge ordered him released on bond. Dkt. 9, p.4. Accordingly, the immigration judge made an independent determination that Petitioner was eligible for release on bond; thus, the risk of erroneous deprivation is considerable. *See Arzate v. Andrews*, No. 25-cv-00942-KES-SKO, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025) ("[C]onsidering that petitioner 'was previously found to not be a danger or a flight risk, the risk of erroneous deprivation' is particularly high if, as is the case now, no hearing has been provided."). And while there are disputed factual issues regarding potential reasons Respondents had to re-detain Petitioner, as stated above, a valid reason to detain a noncitizen does not eliminate Respondents' obligation to effectuate the detention in a manner that complies with due process. *Ramirez Tesara*, 800 F. Supp.3d at 1137.

Finally, the third factor also weighs in Petitioner's favor. "The Government's interest in re-detaining non-citizens previously released without a hearing is low . . . and any costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *Ekenge*, 2026 WL 617341, at *5 (citing *E.A. T-B.*, 795 F. Supp. 3d at 1324). Additionally, "requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process." *Acosta*, 2026 WL 821902, at *3.

12

Considering the *Mathews* factors, the Court concludes that Petitioner should have received a pre-deprivation hearing prior to being re-detained.

## E.    Appropriate Remedy

The Court next turns to the appropriate remedy. Mr. Cruz requests immediate release from detention. Dkt. 1, p.19. Respondents argue that the appropriate relief is a bond hearing before an immigration judge. Dkt. 9, p.18. Given the dispute regarding the alleged threatening text messages and other circumstances surrounding Petitioner's re-detention, the Court agrees that the proper remedy is a bond hearing. The immigration judge is in a better position to analyze the evidence and arguments before it and determine if Mr. Cruz is a danger to the community or a flight risk.

*       *       *

For the reasons shared above, Ever Cruz Cruz's Petition for Writ of Habeas Corpus is GRANTED[5] and the Court ORDERS as follows:

1. Mr. Cruz is not subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), and Respondents are ENJOINED[6] from detaining him under 8 U.S.C. § 1225(b)(2)(A).

2. Respondents shall provide Mr. Cruz with a bond hearing under 8 U.S.C. § 1226(a) within SEVEN DAYS of the date of this Court's order.

---

[5] To the extent Petitioner's counsel seeks an award of attorney's fees, he must file a separate motion for fees that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this District.

[6] Respondents are enjoined to the extent that Mr. Cruz remains within the United States. This order shall cease to apply if he is removed from the United States.

13

3.  Respondents shall file a status report within TEN DAYS of the days of this Court's order to certify compliance. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for denial.

DATED: May 4, 2026.

BY THE COURT

_____

S. Kato Crews
United States District Judge

14